JAMES GLENNON (afterwards LOUISA GLENNON, administratrix,) *vs.* EDWARD W. EVERSON & another.

Suffolk. November 15, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability, In construction of building.

A man employed to watch over Saturday night and Sunday an unfinished temporary wooden building open at the ends, who, knowing that the building is not ready for occupancy, goes into it during an unusually severe gale to take out a pick and shovel and is injured by the building being blown over and collapsing, where it does not appear that the collapse of the building was due to any negligence in its construction, cannot recover against his employer for his injuries.

In an action for personal injuries from the collapse of a wooden building the fact that wire nails, which it appears are in general use, were used in the construction of the building is not evidence of negligence.

TORT for personal injuries sustained while in the employ of the defendants on November 24, 1901. Writ dated January 23, 1902.

In the Superior Court the case was tried before *Schofield*, J. The plaintiff between one and two o'clock in the afternoon of Sunday, November 24, 1901, being at the time twenty-seven years of age, was injured by the collapse of a structure on St. Alphonsus Street in that part of Boston called Roxbury. This structure was an unfinished wooden building intended to be used in connection with sewer work in which the defendants then were engaged, and was to contain the engines, boilers, pumps

and other machinery used in the work. The plaintiff was put in charge of the unfinished building as a watchman to look after it on Saturday night and Sunday. He testified that on Saturday afternoon, after he had been told to watch the building, he went home and got his supper and came back just about dark, but there was no one there then; that he took one of the lanterns and walked around all that night until the next morning; that on Sunday morning he got his breakfast and came back again and was around the building until about one o'clock, when " I happened to look in from the upper end and I see this pick and shovel, and I knew I would be charged for it if it was lost, and I went in. I did not happen to notice it that day before until then. I started to pick it up. I got about one quarter in and I heard a crack and I made a grab for this plank, but I did not have time to pull it out before the building came down." "That the wind started up pretty hard that Saturday night before Sunday; that it started up about eleven o'clock and that it blew all night long pretty hard; that the wind was coming up St. Alphonsus Street straight against the side of the building, and the building just tipped right over."

For twelve or eighteen hours before the accident there had been a northeast storm. The plaintiff testified: "It was kind of blowing, about five o'clock I should say it started, it may be somewhere, around, during the afternoon, it was blowing and then started in to blow quite hard till around about twelve o'clock or so. It blew pretty stiff during the night. It was still blowing at daylight and raining, blowing and blowing pretty hard."

The incompleted structure was open at both ends. There was some question whether all the roof was on. The plaintiff was not sure that the sides were boarded the whole length.

It appeared that wire nails were used in the construction of the building. A carpenter, called as an expert by the plaintiff, testified that he was of the opinion that wire nails were unstable and unsafe for use in the framework of a building; that their resistance to lateral pressure in the framework of a building was not equal to that of the cut iron or cut steel nails. On cross-examination he testified that he was seventy years of age; that he gave up active work a few years ago; that he never saw the building in question; that he thought that the proportion of

wire nails used to cut nails was about six to one; that he regarded the younger men in the building business as a pretty shiftless lot; that there was a sharp difference of opinion as to the use of wire or cut nails; that there was practically no difference in the cost. Experts, called by the defendant, testified that wire nails were safer and better than cut nails for use in the construction of buildings.

At the close of the evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

The trial was on February 23, 1905. On July 18, 1905, the plaintiff died, and on January 15, 1906, the administratrix of his estate was allowed to appear and prosecute the action.

*W. H. Shea*, for the plaintiff.

*A. H. Russell*, for the defendants.

HAMMOND, J. The verdict for the defendants was rightly ordered. There was no evidence of their negligence. The building was not finished and the plaintiff knew it. It was left open at the ends, and the plaintiff was not justified in assuming that it was ready for occupancy. It was standing in an exposed position and the wind was blowing very hard. It does not appear that the plaintiff was expected to take shelter in the building or to enter it. It cannot be held that the use of wire nails was evidence of negligence. They are quite generally used. This is simply a case where an unfinished building succumbs to an unusually severe gale. It does not appear that this was due to any negligence of the defendants.

*Exceptions overruled.*